[No. 9245-3-III.   Division Three.   March 30, 1989.]

FEDERATED SERVICE INSURANCE CO., *Respondent,* v. R.E.W., INC., *Appellant.*

*James Scott* and *Smith, Scott & Mazzola,* for appellant.

*Walter G. Meyer, Jr.,* and *Meyer & Fluegge,* for respondent.

THOMPSON, C.J.—R.E.W., Inc., is insured under two policies issued by Federated Service Insurance Company. The first policy is a comprehensive general liability (CGL) policy with a multi–cover liability endorsement. The second policy is a commercial umbrella liability policy. This appeal by R.E.W. is from a summary judgment declaring that neither policy covered a claim made by R.E.W. in 1987. We affirm.

R.E.W. is a general contractor. It constructs cold storage and controlled atmosphere storage rooms and buildings for fruit growers in the Yakima, Washington, area. In 1986, it built controlled atmosphere storage rooms for Roy Farms, Inc., Borton and Sons, and Allan Brothers. R.E.W. used a product known as "Isoboard" as the inner panel liner for these new facilities. However, the "Isoboard" warped and waffled, causing the air seal which is necessary for a controlled atmosphere environment to rupture.

The owners demanded that R.E.W. remove the "Isoboard" and replace it with a plywood liner. They further advised R.E.W. they would hold it responsible for any damages they incurred as a result of the deficiency of the "Isoboard". R.E.W. immediately contacted its insurer, Federated Service Insurance Company.

On April 17, 1987, Federated notified R.E.W. that its policies covered the cost of tearing out the board, but not the cost of replacing it or labor costs. On June 4, it sent another letter to R.E.W., this time stating that the policy covered the cost of labor. On June 12, Federated sent a final letter to R.E.W., taking the position that

[s]ince the buildings are your product we must then respectfully refer you to the exclusion section of your insurance contract specifically exclusion 'N'. You will note that it states:

"This insurance does not apply:

N. To property damage to the named insured's products arising out of such products . . ."

Since the building is your product, and since the damage is confined to that product this exclusion would be directly in point. There would, therefore, be no coverage for the tear out or removal of the damaged board, or any of the cost associated with replacing the board or repairing the buildings. There would continue to be coverage for consequential loss sustained by your customers, such as damage to the apples, or additional expenses incurred by the farmers to protect the apples.

On July 6, Federated filed this action for a declaratory judgment construing the policy. In addition to exclusion N, set forth above, Federated's complaint relied on the following provisions of the CGL policy:

Exclusions. This insurance does not apply:

. . .

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

(p) to damage claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein; . . .

The complaint also listed the exclusions contained in the umbrella policy for the insured's product or work and for withdrawal of the insured's product.

R.E.W. argued that any product exclusion in the CGL policy was abrogated by the language of the multi–cover liability endorsement:

IV. Broad Form Property Damage (Including Completed Operations)

The insurance for property damage liability applies, subject to the following additional provisions:

(A) The exclusions relating to property damage to . . . (2) work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions . . . (z):

This insurance does not apply:

. . .

(z) With respect to the completed operations hazard, to property damage to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

R.E.W. also argued coverage was provided and not excluded by the commercial umbrella liability policy:

SECTION 1. . . .

B. . . .

We will pay on behalf of the insured the "ultimate net loss" for an "occurrence" anywhere in the world which:

(1) Is not covered by "underlying insurance" . . .

Both parties moved for summary judgment, and the court granted the insurer's motion.

■ We agree with the Superior Court that the exclusions of the policies apply.[1] "[A] general liability policy is not a form of performance bond, product liability insurance, or malpractice insurance." *Westman Indus. Co. v.*

---

[1] In so holding, we are mindful of the rule of construction that exclusions in an insurance policy are narrowly construed. *Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 841, 734 P.2d 17 (1987); *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 358, 517 P.2d 966 (1974).

*Hartford Ins. Group,* 51 Wn. App. 72, 80, 751 P.2d 1242 (citing *Indiana Ins. Co. v. DeZutti,* 408 N.E.2d 1275, 1279 (Ind. 1980); *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 405 A.2d 788, 791–92 (1979); *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group,* 37 Wn. App. 621, 628, 681 P.2d 875 (1984), *review denied,* 110 Wn.2d 1036 (1988)). R.E.W. cannot recover under the policies for its own faulty product.

Nevertheless, R.E.W. contends the damages here are not excluded because the "Isoboard" damaged property (the stored apples) other than R.E.W.'s product, and replacement of the "Isoboard" was necessary to remedy that damage.[2]

The cases cited by R.E.W. in support of this argument are distinguishable. *Hauenstein v. St. Paul–Mercury Indem. Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954) involved a claim of coverage under a CGL policy by an insured who had sold defective plaster to a contractor who used it in a construction job. The plaster shrank and cracked, and the contractor had to remove it. The court held at page 356 that an exclusion for "injury to or destruction of * * * any goods or products manufactured, sold, handled or distributed by the Insured * * *" did not exclude coverage for all of the contractor's damage claims. While damage to the plaster itself was excluded, the court held that the presence of the defective plaster reduced the value of the building and constituted property damage. Thus, the court awarded damages for "the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser". *Hauenstein,* at 358.

---

[2]R.E.W. used exceptional measures to remedy the defective "Isoboard" by removing it, installing plywood sheets and resealing the building before the next apple crop was harvested. At oral argument, counsel advised this cost approximately $500,000.

In *Hauenstein,* the insured's product was the plaster; here, the insured's product was the entire building. Damage to the building R.E.W. constructed caused by use of defective materials was also damage to its product and comes within the policy exclusion. Further, the standard "insured's product" exclusion was revised after *Hauenstein.* The full text of the exclusion was not quoted in *Hauenstein,* but *S.L. Rowland Constr. Co. v. St. Paul Fire & Marine Ins. Co.,* 72 Wn.2d 682, 686, 434 P.2d 725 (1967), quoted the exclusion as providing:

This policy does not apply:

. . . .

(h) . . . to injury or destruction of:

. . . .

    (4) any goods, products, or containers thereof manufactured, sold, handled or distributed by the Insured, or work completed by or for the Insured, *out of which the accident arises,* nor to costs of repair or replacement thereof. . . .

*Rowland* interpreted the italicized language as excluding only the defective component, not the insured's entire product, *i.e.,* damage to a faulty fire box was excluded, but not damage to the rest of the house built by the insured. R.E.W.'s policy does not contain the limiting language of the policy in *Rowland.*

In *Marley Orchard Corp. v. Travelers Indem. Co.,* 50 Wn. App. 801, 750 P.2d 1294, *review denied,* 110 Wn.2d 1037 (1988), the CGL had the same provisions as R.E.W.'s policy, but the facts which gave rise to the claim were materially different. There, the insured's product was an irrigation system which proved inadequate to water the plaintiff's orchard. As a result, trees in the orchard were "stressed" from lack of water. To remedy the problem, the plaintiff owner added branch lines and sprinkler heads to the insured's irrigation system. *Marley* held that the stress to the trees constituted property damage and that the expense of adding to the insured's system was covered by the insured's CGL policy as a consequential damage flowing from the covered property damage to the trees. The court

further held this expense was not excluded under the exclusion for property damage to the insured's product. It reasoned that the policy defined property damage as "physical injury to tangible property" and that the irrigation system itself suffered no physical injury.

Unlike *Marley,* damage to the "Isoboard" and the cost of replacing it are excluded by the policy: in *Marley,* the irrigation system itself was not physically damaged; here, the warped "Isoboard" constituted physical injury to tangible property. In *Marley,* the irrigation system did not have to be withdrawn or replaced; here, the warped "Isoboard" had to be removed and replaced with plywood. As noted above, exclusion (p) in the general liability policy excludes damages for withdrawal and replacement of the insured's defective products.

Next, R.E.W. cites provisions of the multi–cover liability endorsement and the umbrella policy which it argues provide coverage for the damage.

The multi–cover liability endorsement replaces exclusion (o) in the CGL policy with a new exclusion. Exclusion (o) excludes property damage to work performed by or on behalf of the insured. Under exclusion (z), the broad form property damage clause of the multi–cover liability endorsement does not apply, "with respect to completed operations", to property damage to the insured's work. As Federated points out, exclusions (n) and (p) of the CGL policy are not affected by the multi–cover liability endorsement and continue to apply. Even if we were concerned solely with exclusion (o), the exclusion in the endorsement for the insured's work applies to completed operations. Here, R.E.W. had completed the controlled atmosphere buildings before the defect was discovered. Thus, the exclusion of the endorsement applies.[3]

---

[3]R.E.W. argues that *Westman* is authority for its assertion that the endorsement provides coverage here. We disagree. *Westman* does not mention the existence of a broad form property damage coverage endorsement. All it says is that the insured's policy there had an endorsement which excluded coverage for damage to the boats of third parties. *Westman,* at 82. The court concluded at pages

■ The coverage clause of the umbrella policy upon which R.E.W. relies must be read in conjunction with that policy's exclusions, two of which are applicable here: one for damages claimed for the withdrawal or replacement of the insured's product; the other for property damage to the insured's product or work arising out of that product or work.[4]

R.E.W.'s argument regarding the applicability of the foregoing exclusions appears to be: "Why did we purchase this additional insurance if it was not going to cover this type of situation?" But the fact the endorsement and the umbrella policy do not provide added coverage in this situation does not mean they failed to provide R.E.W. with any extra coverage.

Finally, R.E.W. asserts the language of the policies is ambiguous and therefore must be construed in its favor. *See Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 358, 517 P.2d 966 (1974). It relies on the fact that even Federated at first thought there was insurance coverage for some of the damages. However, when R.E.W. gets down to specifics, it can only come up with the following arguments:

1. The multi–cover liability endorsement states that "the insurance is amended to include the following additions and extensions of coverage". R.E.W. simply argues that Federated has ignored this additional coverage. But, as

---

82–83: "Consequently, appellant cannot now seek coverage for a risk he specifically declined to purchase".

[4]In its discussion of the umbrella policy, R.E.W. cites *Prudential Property & Cas. Ins. Co. v. Lawrence,* 45 Wn. App. 111, 724 P.2d 418 (1986). First, it notes that the umbrella policy in *Lawrence* did not require *physical* injury to tangible property. *Lawrence,* at 117. However, the umbrella policy here includes such a requirement in its definition of property damage. In any event, the issue here is not whether there was property damage. It is whether the exclusions apply so as to allow Federated to deny coverage for the property damage.

R.E.W. also cites *Lawrence,* at 119, for its statement that one of the purposes of an umbrella policy is to protect against gaps in the underlying policy. That statement does not mean that umbrella policies fill all the gaps. Here, the umbrella policy clearly excludes coverage for property damage to R.E.W.'s product arising out of that product.

noted above, the endorsement was not drawn to cover all losses excluded by the CGL policy and contained its own exclusion for the insured's work.

2. R.E.W. quotes out of context the language in the worldwide products liability clause of the endorsement that coverage is provided "anywhere in the world" with respect to bodily injury or property damage arising out of the insured's products. That clause simply extends the definition of "policy territory"; it does not otherwise extend coverage.

3. According to R.E.W., since the umbrella policy provides coverage for liability not covered by underlying insurance, it should be read as applying here. R.E.W. ignores the exclusions of the umbrella policy, cited above, which clearly apply in this situation.

4. R.E.W. contends the exception to exclusion 5 of the umbrella policy applies:

> Impaired Property, Damage to—"property damage" to "impaired property" or property that has not been physically injured, arising out of:
> a. a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" . . .
>
> . . .
> *This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

(Italics ours.) The "other property" is property other than the insured's work or product. Here, it was R.E.W.'s product that was damaged, not "other property".

We are not persuaded that any ambiguities exist in these policies. We hold the exclusions apply, and the court properly granted Federated's motion for summary judgment.

.

Affirmed.

Munson and Shields, JJ., concur.