[No. 35392-6-I.   Division One.   April 15, 1996.]

JOAN SCHWINDT, ET AL., *Appellants*, v. UNDERWRITERS AT LLOYD'S OF LONDON, ET AL., *Respondents.*

*Thomas W. Hayton* and *Schwabe, Williamson, Ferguson & Burdell,* for appellants.

*Michael B. King, Mark P. Scheer, Maria E. Sotirhos,* and *Lane Powell Spears Lubersky,* for respondents.

Cox, J. — Joan Schwindt and Richard Jones brought this action against four insurers to recover for damage to their building. The damage was caused by Pan Pacific Builders, the contractor who constructed the building. The trial court granted the insurers' motion for summary judgment, concluding that the policy did not cover the

claims. Because the claimed damage falls within the policy's exclusions for "defective products" and "faulty work," we affirm.

Joan Schwindt and Richard Jones were partners who contracted with Pan Pacific Builders to build Bellingham Surgery Center. Pan Pacific procured property damage liability insurance from Underwriters at Lloyd's of London, St. Katherine Insurance Company, PLC, Terra Nova Insurance, Ltd., and Sphere Drake Insurance PLC.

The Broad Form Property Damage Liability Insurance issued to Pan Pacific grants coverage as follows:

> Any or all liability imposed by law against the Assured for loss of or damage to or destruction of property of others (including but not limited to, damage resulting from loss of use of property damaged or destroyed and all other indirect and consequential damage for which legal liability exists in connection with such damage to or destruction of property of others) sustained or alleged to have been sustained during the currency of this insurance and arising from any cause whatsoever out of the operations, activities, work and/or business of the Assured anywhere in the world, in connection with the Assured's business as stated above.

The exclusions clause of the policy excludes coverage for claims made against the assured:

> (1) for repairing or replacing any defective product or products manufactured, sold or supplied by the Assured or any defective part or parts thereof nor for the cost of such repair or replacement; or

> (2) for the loss of use of any such defective product or products or part or parts thereof, or

> (3) for damage to that particular part of any property upon which the Assured is or has been working caused by the faulty manner in which the work has been performed . . . .

Construction of the medical center did not go well. Schwindt and Jones sued Pan Pacific, alleging negligent

workmanship and breach of contract. Among other things, Schwindt and Jones claimed that mechanical equipment, doors, and door hardware, all of which were supplied and installed by Pan Pacific, were defective. Schwindt and Jones spent funds replacing this defective material.

Further discovery revealed more physical damage to the building. The air conditioner chiller that was installed by subcontractors of Pan Pacific had to be rebuilt and ultimately replaced. Damage to the chiller was caused by a defective valve and poor wiring. Glass block towers installed by subcontractors had to be repaired and replaced because they broke and caused water leakage. This leakage in turn caused steel structural members to rust.

Windows Pan Pacific installed had to be repaired due to leakage in the ceilings on two floors. A new drainage system was installed to stop leakage caused by a poor roof design by subcontractor architects. Waterproofing done by Pan Pacific on the basement walls had to be repaired due to seepage in the basement. This seepage discolored the basement wall, flooded portions of the basement, and ruined the floor tile. Finally, the exterior marble supplied and installed by Pan Pacific dulled and cracked because it was made of material too soft to withstand weather.

Pan Pacific filed a claim seeking coverage under the insurance policy. The insurers declined coverage. Pan Pacific commenced this action against the insurers to obtain a declaratory judgment for coverage and alleging breach of the insurance contract. During this action, Schwindt, Jones, and Pan Pacific mediated a settlement. As part of that settlement, Pan Pacific assigned to Schwindt and Jones its claim against the insurers. The insurers then moved for summary judgment against Schwindt and Jones, claiming that the policy did not cover the damage alleged in their claim. The trial court granted the insur-

ers' motion for summary judgment and dismissed the complaint. Schwindt and Jones appeal.

## Policy Coverage

Schwindt and Jones contend that the trial court erred by granting summary judgment because the insurance policy to which Pan Pacific is a party covers damage to the "property of others." They assert that the policy covered damage to the medical center because it was their building, not Pan Pacific's, and therefore it qualified as the "property of others."

The insurers first argue that the record does not support such a finding. Alternatively, they argue that even if the alleged damage falls within the granting clause as damage to the property of others, it was nonetheless excluded from coverage under the "defective product" and "faulty work" exclusions of the policy. We hold that the exclusions apply.

When reviewing a summary judgment, we engage in the same inquiry as the trial court.[1] We apply the standards of CR 56(c) after considering the facts and inferences therefrom most favorably toward the nonmoving party. We review questions of law de novo.[2]

Granting summary judgment under CR 56(c) is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is not proper if reasonable minds could draw different conclusions from

[1] *Barr v. Day,* 124 Wn.2d 318, 324, 879 P.2d 912 (1994).

[2] *Caritas Servs., Inc. v. Department of Social & Health Servs.,* 123 Wn.2d 391, 402, 869 P.2d 28 (1994).

undisputed facts or if all of the facts necessary to determine the issues are not present.[3]

The interpretation of an insurance policy is an issue of law.[4] Insurance policy language is interpreted as it would be understood by an average person and in a manner that gives effect to each provision.[5] "Determining whether coverage exists is a 2-step process. The insured must show the loss falls within the scope of the policy's insured losses. To avoid coverage, the insurer must then show the loss is excluded by specific policy language."[6]

There is no dispute that the claimed damage is based on information in the pleadings, the information developed during discovery, and the affidavits attached to Schwindt's and Jones' answer to the summary judgment motion. The damages claimed by Schwindt and Jones are summarized as follows:

1. Replace the air-conditioning chiller;

2. Replace the broken glass towers and repair steel structural members rusted by resulting water leaks;

3. Repair faulty windows and related water leak damage;

4. Replace faulty roof water drainage system (gutters and downspouts) and related ceiling water leak damage;

5. Replace defective marble building "skin";

6. Replace defective doors and door hardware; and

7. Cure defective waterproofing of basement and repair related water seepage damage.

## A

### Coverage for Damage to the "Property of Others"

Schwindt and Jones first argue that the damage alleged

---

[3]*Ward v. Coldwell Banker/ San Juan Properties, Inc.*, 74 Wn. App. 157, 161, 872 P.2d 69, *review denied*, 125 Wn.2d 1006 (1994).

[4]*McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 730, 837 P.2d 1000 (1992).

[5]*McDonald*, 119 Wn.2d at 733.

[6]*McDonald*, 119 Wn.2d at 731.

against Pan Pacific was covered by the insurance policy's general grant for damage to the "property of others." They argue that because they—not Pan Pacific—owned the building, damage done to the building constitutes damage to the "property of others."

The record is silent on this point. Nowhere is there any evidence in either the written materials that were before the trial court or its order that this proposition is correct.

Schwindt and Jones rely on the Ninth Circuit's decision in *Baugh Constr. Co. v. Mission Ins. Co.*,[7] where that court interpreted Washington law in its review of a similar claim under an identical damage liability policy. There, the insurers declined coverage for damage to a building constructed by the insured contractors. The court held that the policy covered the damage because the building qualified as "property of others." The court's holding was based on an explicit finding by the trial court that a third party, not the contractors, held title to the building.[8]

But here, there was no such finding by the trial court. Nor does the record support such a finding. Schwindt and Jones cite to a brief, not evidence, and to language indicating that the "project owner" is a partnership called "Pan Pacific Development Partners." That is insufficient to establish who had title to the property. Because this genuine issue of material fact is disputed, we do not determine whether, as matter of law, the policy grants coverage under this provision.

That does not end our inquiry. Assuming, without deciding, that the building does fall within the provisions of this clause, the remaining question is whether coverage is excluded under other policy provisions. We consider that question below.

---

[7]836 F.2d 1164, 1169 (9th Cir. 1988)

[8]*Baugh*, 836 F.2d at 1169.

B

## "Defective Products" and "Faulty Work" Exclusions

Schwindt and Jones argue that neither the "defective products" nor "the faulty work" exclusion applies to the alleged damage. First, they argue that the "defective products" exclusion does not apply because Pan Pacific is not a vendor of the products. They also argue that even if the "defective products" and "faulty work" exclusions apply, consequential damage resulting from defective products and faulty work is covered under the policy's general provision relating to damage to property of others. Finally, they argue that neither exclusion applies to damage resulting from the actions of subcontractors. We reject all of these contentions.

### 1. Vendors of Products

First, Schwindt and Jones erroneously assert that the defective product exclusion applies only to vendors of those products. Neither the policy language itself nor the case law supports such an interpretation. The specific language of this provision excludes coverage for repair or replacement of "any defective product or products manufactured, sold or *supplied* by the Assured." (Italics ours.) Thus, it is irrelevant whether Pan Pacific is a vendor of the defective products at issue. So long as it *supplied* the products, the policy excludes coverage for damage related to repair or replacement of them.

Here, there is no dispute that Pan Pacific installed and supplied the defective products. The claimed damage consisted of the repair and replacement of defective products as well as damage resulting from negligent installation of these products. Thus, the exclusion applies.

The cases Schwindt and Jones cite do not support the

proposition that the products exclusions in this case apply only to vendors. In *Prosser Comm'n Co. v. Guaranty Nat'l Ins. Co.*,[9] the court held that a products exclusion did not apply to the insured, a cattle broker who negligently sold a diseased cow that infected the buyer's entire herd. The court agreed with the insured that the damage at issue was not "inadequate manufacture or processing of a product, but from negligence in failing to perform the service of having the cow inspected."[10] As this court later explained, "the [*Prosser*] court was merely saying a products exclusion does not apply to damages arising from a business's provision of services."[11] Here, the claimed damage included the defective products themselves. These products were supplied and installed by Pan Pacific.

In *Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*,[12] the court held that the insured's installation of a water tank was not a product subject to the product exclusion in the insurance policy. There, the damage at issue arose out of a landslide that destroyed the water tank. But the water tank itself was free of defects.[13] Thus, because the allegation against the insured was negligent installation, not installation of a defective product, the products exclusion did not apply.[14] In contrast, the claimed damage here consisted of the defective products themselves.

The other cases cited by Schwindt and Jones do not support their position. Rather, those cases interpret what constitutes a "product" for purposes of interpreting vari-

---

[9]41 Wn. App. 425, 700 P.2d 1188, *review denied*, 104 Wn.2d 1016 (1985).

[10]*Prosser*, 41 Wn. App. at 429.

[11]*Westman Indus. Co. v. Hartford Ins. Group*, 51 Wn. App. 72, 81, 751 P.2d 1242 (1988), *review denied*, 110 Wn.2d 1036 (1988).

[12]864 F.2d 648, 654 (9th Cir. 1988)

[13]*Fireguard Sprinkler*, 864 F.2d at 654.

[14]*Fireguard Sprinkler*, 864 F.2d at 654-55.

ous products exclusion provisions of insurance policies.[15] Moreover, these cases conflict with Washington law on the issue of what constitutes a "product" for purposes of product exclusions. They are not binding on this court.[16]

## 2. Consequential Damage

Schwindt and Jones further argue that even if the exclusions apply, they do not extend to claims of bad work or bad use of material resulting in damage beyond removal and replacement of the particular item of defective work. They argue that consequential damage resulting from defective products and faulty work is covered under the general provision relating to "all other indirect and consequential damage for which legal liability exists in connection with such damage to or destruction of property of others." We disagree.

■ Washington case law interprets such product exclusions to encompass entire buildings as defective products. This view is consistent with Washington courts' reluctance to interpret such general liability policies as a form of performance bond, product liability insurance, or malpractice insurance.[17]

In *Federated Serv.*, the court held that damage to a building constructed by an insured contractor caused by the contractor's use of defective materials fell within the policy exclusions.[18] There, the policy at issue excluded "property damage to the named insured's products arising out of such products" and "property damage to work

---

[15]*See Maryland Casualty Co. v. Reeder*, 221 Cal. App. 3d 961, 270 Cal. Rptr. 719, 727-28 (1990) (insured contractor's "product" was not an entire condominium project for purposes of products exclusion clause), *review denied* (Sept. 19, 1990); *Mid-United Contractors, Inc. v. Providence Lloyds Ins. Co.*, 754 S.W.2d 824 (Tex. Ct. App. 1988) (entire building was not "product" for purposes of products exclusion clause), *error denied* (1989).

[16]*See Westman*, 51 Wn. App. at 80; *Federated Serv. Ins. Co. v. R.E.W., Inc.*, 53 Wn. App. 730, 735, 770 P.2d 654 (1989).

[17]*See Westman*, 51 Wn. App. at 80; *Federated Serv.*, 53 Wn. App. at 733.

[18]*Federated Serv.*, 53 Wn. App. at 735.

performed by . . . insured arising out of the work . . . or . . . materials, parts or equipment furnished in connection therewith."[19] The court held that damage caused by use of defective products was also damage to its product.[20]

Likewise, in *Baugh*, the Ninth Circuit held that a building constructed by insured contractors was a defective product and subject to the products exclusions.[21] Thus, that court concluded that all damage alleged as a result of the building being a defective product was subject to the exclusion.[22] But the court determined that the faulty work exclusions did not apply to damage "*unrelated* to the actual cost of repairing or replacing the defective part of the product" and held that the exclusion did not apply to claims for damage to tenant improvements.[23]

Here, the undisputed facts are that the alleged damage resulted from either defective products (repair or replacement of exterior marble, doors and door hardware, leaking windows, subsurface drain, air conditioner chiller, roof, glass blocks, and rust caused by leaking glass blocks) or faulty work (poor wiring resulted in failed chiller, poor waterproofing of basement walls resulted in seepage and ruined floor tile). Therefore, by their very language the defective product and faulty work exclusions apply.[24] The only arguable "consequential damage" alleged consists of the rusting of the steel members caused by the leaking glass blocks and the ruined floor tiles caused by the poor waterproofing of the basement walls. But because this

---

[19]*Federated Serv.*, 53 Wn. App. at 732. *See also Westman*, 51 Wn. App. at 80 (citing *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275, 1280 (Ind. 1980) (contractor's "product or work" was the entire project or house which he built and sold); *Eulich v. Home Indem. Co.*, 503 S.W.2d 846, 849 (Tex. Civ. App. 1973) ("property damage to work performed" included damage to building constructed by insured contractor)).

[20]*Federated Serv.*, 53 Wn. App. at 735.

[21]*Baugh*, 836 F.2d at 1172.

[22]*Baugh*, 836 F.2d at 1171-72.

[23]*Baugh*, 836 F.2d at 1172.

[24]*See McDonald*, 119 Wn.2d at 735 (exclusions for faulty construction and defective material are unambiguous).

damage is still a part of the defective building itself, it falls within the policy exclusions.[25]

The Washington cases cited by Schwindt and Jones do not apply to the policy language at issue here.[26] In *Rowland* and *Gruol*, both decided before *Westman*, the policy exclusions were drafted so that they applied to only the faulty components that caused damage, not to the entire product or building. In those cases, the exclusions applied only to products or work "out of which the accident [or occurrence] arises."[27] Thus, damage beyond repair and replacement of the faulty components was not subject to the policy exclusions.[28]

But here, the exclusion is not limited to the component out of which the damage arose. Rather, it excludes coverage for "any defective part or parts thereof." Thus, its applicability is not limited to the extent suggested by Schwindt and Jones. As the court observed in *Westman*:

> In reaction to [*Rowland*] and its progeny, insurance companies around the nation revised the standard products exclusionary language to ensure that coverage was excluded for property damage to the insured's entire product, not just the component out of which the damages arose. As a result of this language change, the standard products exclusion is now universally construed to include houses in the definition of product.[29]

Here, the claimed damage is a result of defective products, one of which is the defective building itself. That damage is subject to the defective products exclusion.

Schwindt and Jones also cite a California case, *Eichler*

---

[25]*Baugh*, 836 F.2d at 1171-72. *See also Westman*, 51 Wn. App. at 80; *Federated Serv.*, 53 Wn. App. at 735.

[26]Appellant cites *Gruol Constr. Co. v. Insurance Co. of N. Am.*, 11 Wn. App. 632, 524 P.2d 427, *review denied*, 84 Wn.2d 1014 (1974); *S.L. Rowland Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 72 Wn.2d 682, 434 P.2d 725 (1967).

[27]*Rowland*, 72 Wn.2d at 686 (italics omitted); *Gruol*, 11 Wn. App. at 636.

[28]*Rowland*, 72 Wn.2d at 688; *Gruol*, 11 Wn. App. at 637.

[29]*Westman*, 51 Wn. App. at 79-80 (citations omitted).

*Homes, Inc. v. Underwriters at Lloyd's, London.*[30] In that case, the court did note that consequential damage from defective products would fall within a defective products exclusion identical to the one in this case.[31] But the court did not reach the issue of whether the exclusions applied as a matter of law. Rather, it considered whether the insurers had a duty to defend, which is much broader than the duty of actual indemnification.[32] Nonetheless, this interpretation conflicts with Washington law on the issue and is not binding on this court.[33]

### 3. Work Done by Subcontractors

Finally, Schwindt and Jones argue that the exclusions do not apply to products installed and work done by subcontractors because the policy exclusions refer to products installed and work done by "the Assured," not "on behalf of" the assured. They rely on cases where the policy had previously omitted the language, "on behalf of," evidencing an intent not to include subcontractors in the products exclusions provisions.[34] But these cases do not address the policy language at issue in this case. Here, there is no comparable evidence that the insurers did not intend to include the work of subcontractors in these provisions.

Moreover, this interpretation does not reflect the realities of the commercial construction process or the intent of such broad form property damage insurance policies. We find persuasive the Minnesota court's approach to interpreting liability insurance policies issued to

---

[30]238 Cal. App. 2d 532, 47 Cal. Rptr. 843 (1965).

[31]*Eichler*, 47 Cal. Rptr at 847.

[32]*Eichler*, 47 Cal. Rptr at 846-47.

[33]*See, e.g., Baugh*, 836 F.2d at 1171-72; *Westman*, 51 Wn. App. at 80; *Federated Serv.*, 53 Wn. App. at 735.

[34]Appellant cites *Fireguard Sprinkler*, 864 F.2d at 650-03; *Maryland Casualty*, 270 Cal. Rptr. 719; and *Harbor Ins. Co. v. Tishman Constr. Co.*, 218 Ill. App. 3d 936, 578 N.E.2d 1197, *appeal denied*, 142 Ill. 2d 654 (1991).

contractors and hold that work of subcontractors is necessarily included in exclusions pertaining to faulty work or defective products of the contractor.[35] As the court explained in *Knutson,*

> whether the work was "done by" or "on behalf of" the general contractor is irrelevant to the analysis. The completed product is to be viewed as a whole, not as a "grouping" of component parts.[36]

In *Knutson,* a general contractor for a housing project subcontracted out various jobs for the project.[37] The owners of the project sued the contractor for breach of contract, alleging use of defective materials and poor workmanship. The court held that the policy exclusions applied to the work and products of the subcontractors despite the absence of language regarding work done "on behalf of" the assured contractors.

As that court explained:

> Knutson, by contract, undertook to furnish all materials and labor. It had responsibility for all construction work — its own as well as its subcontractors['']. It had "effective control" over all project work and materials, including those provided by subcontractors. When the completed project is turned over to the owner by the general contractor, all of the work performed and materials furnished by subcontractors merges into the general contractor's product—a product it has contracted to complete in a good workmanlike manner.[38]

In *Bor-Sun,* the court held that damage to a building caused by the contractor's faulty workmanship and furnishing of defective materials in construction of that building was a business risk to be borne by the contractor

---

[35]*See Bor-Son Bldg. Corp. v. Employers Commercial Union Ins. Co. of Am.,* 323 N.W.2d 58 (Minn. 1986); *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.,* 396 N.W.2d 229 (Minn. 1982).

[36]396 N.W.2d at 237.

[37]396 N.W.2d at 231.

[38]*Knutson,* 396 N.W.2d at 236.

and not by the comprehensive general liability insurer. The court noted that:

> The insured-contractor can take pains to control the quality of the goods and services supplied. At the same time he undertakes the risk that he may fail in this endeavor and thereby incur contractual liability whether express or implied. The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.[39]

Other courts have adopted this reasoning.[40] As the Pennsylvania court explained:

> the named insured is the general contractor and work performed by the insured must necessarily be such work as the named insured is required to perform under the construction contract. How the insured performs the work is a matter for its decision in the exercise of sound business practice. The contractor can employ subcontractors or use employees to do the work, but in the end, when the work is complete, all the work called for by the contract on the part of the contractor must be deemed to be work performed by the contractor.[41]

Likewise, here, Pan Pacific undertook construction of the surgery center and was obligated by the contract to perform that work in a satisfactory manner. The fact that it subcontracted out some of the work on the project did not relieve it of its contractual obligation to produce a product free of defects and faulty workmanship.

We affirm the summary judgment order.

---

[39]*Bor-Sun*, 323 N.W.2d at 64 (quoting *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 239, 405 A.2d 788, 791 (1979)).

[40]*See, e.g., Blaylock & Brown Constr., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 153 (Tenn. Ct. App. 1990); *Ryan Homes, Inc. v. Home Indem. Co.*, 436 PA. Super 342, 647 A.2d 939 (1994), *appeal denied*, 540 Pa. 621, 657 A.2d 491 (1995).

[41]*Ryan Homes*, 647 A.2d at 943 (quoting *Blaylock*, 796 S.W.2d at 154).

BAKER, C.J., and COLEMAN, J., concur.

Review denied at 130 Wn.2d 1003 (1996).