[No. 2061-1.     Division One.     May 20, 1974.]

VANDIVORT CONSTRUCTION Co., *Appellant*, v. SEATTLE TENNIS CLUB *et al.*, *Defendants*, UNITED STATES FIRE INSURANCE COMPANY, *Respondent*.

*Davis, Wright, Todd, Riese & Jones* and *Rex M. Walker*, for appellant.

*Reed, McClure, Moceri & Thonn, P.S.*, and *William R. Hickman* and *Hugh A. McClure*, for respondent.

FARRIS, J.—Vandivort Construction Company, a Washington corporation, appeals from the trial court's grant of summary judgment for its third-party liability insurer, United States Fire Insurance Company, in Vandivort's action to recover increased construction costs resulting from an earthslide caused by Vandivort's negligence.

Vandivort contracted with the Seattle Tennis Club to construct a concrete building housing six tennis courts. On September 22, 1966, during construction, an earthslide damaged the site. Immediate remedial work was undertaken to prevent increased damages from the slide and, in addition, the slide necessitated a redesign of the west wall of the building to compensate for the added stress. This caused increased architect fees and construction costs. Vandivort tendered the matter to its insurance carrier, U.S. Fire,

which failed to respond immediately.[1] Vandivort then made the necessary changes and paid the increased costs before suit or settlement negotiations approved by U.S. Fire as required in the contract of insurance.

Vandivort contends that these additional costs are insured by U.S. Fire under two third-party liability policies in effect at the time of the slide: (1) Primary coverage through comprehensive general liability policy No. CAG-100652 (an underlying general liability policy providing up to $100,000 coverage for property damage) and (2) excess coverage under comprehensive catastrophe liability policy No. DCL-209400 (an umbrella policy providing up to $1,000,000 coverage for property damage in excess of the underlying policy's $100,000 limit). The claim included the following items:

A. $34,201.44 for stabilizing the west wall and slide repair.
B. $24,016.93 cost overrun for McGilvra Boulevard repair.[2]
C. $204,483.15 for construction of the west wall as redesigned.
D. $31,274.52 for the cost of redesigning the west wall.
E. $10,327.50 in incidental costs.
Total: $304,303.54

It is not disputed that the claim arose from Vandivort's negligence. The slide occurred September 22, 1966, and notice was immediately given to U.S. Fire which denied coverage on December 19, 1966. A formal claim was filed September 7, 1967, and when U.S. Fire rejected the claim relying upon the insuring provisions, exclusions and conditions of the policies, Vandivort initiated this action. U.S. Fire argues that the claim by Vandivort is to recover Vandivort's own costs and expenses; it is not a suit against Van-

---

[1] U.S. Fire denied coverage on December 19, 1966.

[2] The city initiated an independent action to recover for damages to McGilvra Boulevard. The matter was settled by U.S. Fire as a proper third-party claim but the cost overrun of $24,016.93 was not a part of that lawsuit.

divort by a third party to recover for Vandivort's negligent acts; Vandivort voluntarily expended the funds which it now seeks to recover to correct problems caused by its own negligence; and Vandivort was not sued nor would a third party have had the right to sue for the alleged damages. The trial court found no coverage and granted summary judgment for U.S. Fire. Vandivort appeals. We affirm.

The appeal questions the legal effect of Condition 12 of the primary policy, which provides:

> No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

and Condition H of the umbrella policy, which provides:

> Liability of the company with respect to any one occurrence shall not attach unless and until the insured, the company in behalf of the insured, or the insured's underlying insurer, has paid the amount of retained limit. The insured shall make a definite claim for any loss for which the company may be liable within twelve (12) months after the insured shall have paid an amount of ultimate net loss in excess of the amount borne by the insured or after the insured's liability shall have been made certain by final judgment against the insured after actual trial, or by written agreement of the insured, the claimant, and the company.

It is not disputed that no judgment was entered against Vandivort and that U.S. Fire never agreed to a settlement. Vandivort argues that U.S. Fire waived the "no action" clauses of its policies (Condition 12 and Condition H) when it denied coverage. The effect of those clauses is to provide that no action may be brought against the insurer until the liability of the insured has been finally determined in an action or in an agreement to which the insurer is a party. *See* 11 G. Couch, *Insurance* § 44:312 (2d ed. R. Anderson 1963). Although this state has never decided the question,

some jurisdictions have held that an insurer is liable for his insured's independent settlement of an unlitigated claim after the insurer's denial of liability despite a no action clause. *Thomas W. Hooley & Sons v. Zurich Gen. Accident & Liab. Ins. Co.*, 235 La. 289, 299, 103 So. 2d 449, 67 A.L.R.2d 1078 (1958), held that:

> [B]y the mere denial of the insurer to its insured of any liability under the insurance policy for the damages claimed by a third person, the insurer forfeits its right to claim the benefits of the "no action" clause, and the insured policyholder even in the absence of litigation may compromise the claim against him without prejudicing his right to recover from the insurer the amount of a reasonable and good faith settlement made by him. Especially when as here liability to the third person is unquestioned, and after a denial of coverage by the insurer the policyholder minimizes the loss and avoids the expenses of litigation by a reasonable compromise, the insurer should be unable to claim that reimbursement to its insured of damages clearly covered by the insurance contract is barred by such compromise which was to the ultimate benefit of the insurer.

*See also Keith Fulton & Sons, Inc. v. Continental Ins. Co.*, 273 F. Supp. 486 (D. Mass. 1967); *Neighbours v. Harleysville Mut. Cas. Co.*, 169 F. Supp 368 (D. Md. 1959); *Keating v. Universal Underwriters Ins. Co.*, 133 Mont. 89, 320 P.2d 351 (1958); *Otteman v. Interstate Fire & Cas. Co.*, 172 Neb. 574, 111 N.W.2d 97, 89 A.L.R.2d 1182 (1961).[3]

In a Washington case not directly on point, where an insurer incorrectly denied liability under its policy and the insured then made a fair settlement with the injured party after suit but before judgment, the court held the insurer liable for the amount of the settlement despite a no action clause. *L.J. Dowell, Inc. v. United Pac. Cas. Ins. Co.*, 191 Wash. 666, 688, 72 P.2d 296 (1937). *See also Bosko v. Pitts & Still, Inc.*, 75 Wn.2d 856, 454 P.2d 229 (1969); 7A J. Appleman, *Insurance Law & Practice* §§ 4681, 4682, 4690

---

[3] *Contra, Thompson v. Bolton Chevrolet Co.*, 125 Ga. App. 369, 187 S.E.2d 574 (1972); *Merchants Mut. Ins. Co. v. Transformer Serv., Inc.*, 112 N.H. 360, 298 A.2d 112 (1972).

(1962). Whether Washington should join those jurisdictions which hold that if a third-party liability insurer *incorrectly* denies policy coverage, the insured may make a reasonable settlement before an action is filed and proceed with a claim against the insurer need not be decided here unless U.S. Fire *incorrectly* denied coverage.

The question therefore is whether U.S. Fire *incorrectly* denied coverage under the two policies.

Endorsement No. 7 to the primary policy provides that property damage coverage under the policy does not apply:

1. to injury to or destruction of property owned or occupied by or rented to the insured, property held by the insured for sale or property entrusted to the insured for storage or safekeeping, or

2. except with respect to liability under sidetrack agreements covered by this policy or the use of elevators or escalators at premises owned, rented or controlled by the insured, to injury to or destruction of
    (i)   property while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured,
    (ii)  tools or equipment while being used by the insured in performing his operations,
    (iii) property in the custody of the insured which is to be installed, erected or used in construction by the insured,
    (iv)  that particular part of any property, not on premises owned by or rented to the insured,
        (a) upon which operations are being performed by or on behalf of the insured at the time of the injury thereto or destruction thereof, arising out of such operations, or
        (b) out of which any injury or destruction arises, or
        (c) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured,
    (v)   property which is being transported by the insured by motor vehicle or team, including the loading or unloading thereof.

3. to injury or destruction of any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises.

Endorsement No. 7(2)(iv)(a) which excludes coverage for damage to "that particular part of any property, . . . upon which operations are being performed by . . . insured . . ." bars Vandivort's recovery. Vandivort argues that because the slide occurred at Seattle Tennis Club's north property line and damage is claimed beyond that point, the exclusion which it argues applies only to the particular part of any property upon which work is being performed is not applicable. We reject the argument. The plain meaning of the language covers the situation here. Vandivort was performing operations on the property and the injury here for which damages are claimed arose out of those operations.

The umbrella policy also contains an exclusion which precludes recovery. Endorsement No. 1 to the umbrella policy provides:

It is agreed that this policy shall not apply to liability for injury to or destruction of:
(a) Leased or rented equipment, or
(b) Property being installed, erected or worked upon by the insured, his agents or sub-contractors.

It is agreed that this policy shall not apply under coverage 1(b) to liability for injury to or destruction of:
(a) Any property arising out of (1) blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment or, (2) the collapse of or structural injury to any building or structure due (aa) to excavation, including borrowing, filling or back-filling in connection therewith, or to tunneling, pile driving, coffer-dam work or caisson work, or (bb) to moving, shoring, under-pinning raising or demolition of any building or structure or removal or rebuilding of any structural support thereof;
(b) Wires, conduits, pipes, mains, sewers or other sim-

ilar property, or any apparatus in connection therewith, below the surface of the ground, if such injury or destruction is caused by and occurs during the use of mechanical equipment for the purpose of excavating or drilling, or to injury to or destruction of property at any time resulting therefrom;

Unless such liability be covered by valid or collectible underlying insurance as set out in schedule of underlying policies and then only for such hazards for which coverage is afforded under said underlying insurance.

It is agreed that this policy shall not apply under coverage 1(a) and 1(b) to any liability assumed by the insured under contract unless such liability be covered by valid or collectible underlying insurance as set out in schedule of underlying policies and then only for such hazards for which coverage is afforded under said underlying insurance.

Vandivort argues that the effect of the exclusions in the primary policy and the umbrella policy has been specifically eliminated by Endorsement No. 8 to the primary policy which provides:

In consideration of the premium charged, it is understood and agreed that exclusions "L" and "M" under coverage D [property damage] are hereby deleted from the policy.

Vandivort relies upon the following language in Endorsement No. 1 of the umbrella policy:

[T]his policy shall not apply  .  .  .  to liability for injury  .  .  .
   .  .  . due  .  .  . to excavation,  .  .  .
   . . .
Unless such liability be covered by valid or collectible underlying insurance as set out in schedule of underlying policies and then only for such hazards for which coverage is afforded under said underlying insurance.

Vandivort argues that the quoted language of Endorsement No. 8 reinstates liability for excavation coverage in the primary policy and therefore there is coverage under the umbrella policy. The argument fails to recognize that although Endorsement No. 8 restores excavation coverage to

the primary policy, Endorsement No. 7 precludes coverage for the injury complained of here. Endorsement No. 8 permits coverage in an action by a third party for liability due to excavation but it does not defeat the specific language of Endorsement No. 7. Endorsement No. 1 of the umbrella policy requires that there be coverage under the underlying or primary policy. The umbrella policy provides *excess* coverage. It must therefore follow that if there is no coverage under the primary policy, there can be no coverage under the umbrella policy.

■ U.S. Fire, relying upon the insuring provisions, exclusions and conditions of the policies, correctly denied coverage. There is no liability for damages to property Vandivort works on, nor is there any liability for damage to property which arises out of structural injury due to excavation. The insuring agreement is to pay third parties on behalf of Vandivort. The claim here is for expenses incurred by Vandivort, not a third party, under conditions that are specifically excluded by the terms of the insuring agreement.

> Since an insurance policy is merely a written contract between an insurer and the insured, courts cannot rule out of the contract any language which the parties thereto have put into it; cannot revise the contract under the theory of construing it; and neither abstract justice nor any rule of construction can create a contract for the parties which they did not make for themselves.

*Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.,* 50 Wn.2d 443, 449, 313 P.2d 347 (1957).

Affirmed.

HOROWITZ and CALLOW, JJ., concur.

Petition for rehearing denied August 22, 1974.

Review denied by Supreme Court November 4, 1974.