IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WESTERN NATIONAL ASSURANCE COMPANY, a Washington corporation, | ) ) ) | No. 70143-6-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | |
| v. | ) ) | |
| | ) | ORDER GRANTING MOTION |
| SHELCON CONSTRUCTION GROUP, LLC, a Washington Limited Liability Company, | ) ) ) ) | TO PUBLISH |
| | ) | |
| Appellant. | ) | |

Respondent Western National Assurance Company filed a motion to publish the

opinion filed on May 5, 2014 in the above case. A majority of the panel has determined

that the motion should be granted;

Now, therefore, it is hereby

ORDERED that respondent's motion to publish the opinion is granted.

DATED this 10th day of July, 2014.

FOR THE COURT:

_____
Judge

2014 JUL 10 AM 11:20
COURT OF APPEALS DIV I
STATE OF WASHINGTON


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WESTERN NATIONAL ASSURANCE COMPANY, a Washington corporation, | ) ) | No. 70143-6-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SHELCON CONSTRUCTION GROUP, LLC, a Washington Limited Liability Company, | ) ) ) ) | |
| | ) | |
| Appellant. | ) | FILED: May 5, 2014 |

SCHINDLER, J. — Western National Assurance Company insured general contractor Shelcon Construction Group LLC under a "Commercial General Liability" (CGL) policy. A-2 Venture LLC filed a breach of contract lawsuit against Shelcon. A-2 alleged defective performance by Shelcon resulted in the reduction in value of a property from $8,550,000 to $6,412,500. Shelcon tendered defense of the lawsuit to Western. Because the CGL policy unambiguously excludes coverage, we affirm.

FACTS

A-2 Venture LLC was formed for the purpose of purchasing and developing a subdivision plat known as "Beaver Meadows." A-2 retained DBM Consulting Engineers Incorporated to prepare plans for development of the site for 57 single family residences. A-2 gave the DBM drawings to Shelcon Construction Group LLC to

prepare and submit a bid. On January 10, 2006, Shelcon submitted a bid on the project. The bid excluded "engineering, staking, layout, over-excavation, . . . and structural fill." Shelcon's bid also did not include placement of markers for measurement of settlement on the site.

In February 2011, A-2 filed a "Complaint for Breach of Contract and Damages" against Shelcon. A-2 alleged that the specifications for the work Shelcon agreed to perform were "set forth in detail" in a "Geotechnical Engineering Report" (Report) prepared by The Riley Group Incorporated. The complaint alleged the Report "emphasized that the challenge for the site was underlying peat [deposits]," and recommended placement of dirt to compact the soil and use of settlement markers to "verify" soil compaction. The report recommends inserting the settlement markers during site preparation and keeping the markers in place "until the full amount of settlement had occurred during and after fill and compaction." A-2 alleged that Shelcon placed the markers according to the specifications but then removed the markers and placed fill on top of the area, making "it impossible to accurately measure the settling."

A-2 claimed the failure of Shelcon "to properly prepare the site" resulted in rescission of the purchase and sale agreement and reduction in the value of the property from $8,550,000 to $6,412,500. The complaint alleged, in pertinent part:

> The failure of [Shelcon] to properly prepare the site and soil on [A-2]'s property caused [A-2] to sustain far reaching damages including, but not limited to the following:
>
> . . . .
>
> On August 15, 2007 Sound Built Homes rescinded its agreement to purchase the land because of the failure of the soil preparation to meet the requirements of the geotechnical soil report. The soil preparation had been negligently and improperly done by defendant as aforesaid.

[A-2] then reduced the price of the land to $6,412,500.00 by purchase and sale agreement to Harbour Homes dated October 19, 2007 based upon buyers [sic] knowledge of the soil preparation errors of [Shelcon] and an estimate of the costs of rectifying them. Harbour Homes thereafter rescinded the lower priced agreement in February, 2008.

One loss to [A-2] was the immediate reduction in value of the property from $8,550,000.00 to $6,412,500, i.e. $2,137,500.00 and further losses because of resulting loan defaults and market changes because the property could not be developed or sold.

Western National Assurance Company insured Shelcon under a "Commercial General Liability" (CGL) policy.[1] Shelcon tendered defense of the A-2 lawsuit to Western.

Western informed Shelcon that because the allegations in the complaint alleged "economic loss" and not "property damage" as defined by the CGL policy, it did not have a duty to defend. Western also stated that "even if the allegations did allege 'property damage,' the 'property damage' exclusions j. and m." excluded coverage.

Shelcon tendered defense of the lawsuit to Western a second time in February 2012, attaching a copy of the complaint, the contract between A-2 and Shelcon, and the deposition of the managing member of A-2, Scott Haymond. Haymond testified that Shelcon installed the settlement markers but then "pulled them out, raised the fill, and never installed them a second time." Haymond said that according to Shelcon, the markers were "in the way of the trucks when they're bringing the dirt in because they would hit them or something." Haymond testified that without the markers, "there was no way for the soils people to monitor how much settling had occurred. . . . And that killed my sale. My profit was like 4 million in cash."

---

[1] Policy CP-300007658-00 issued by Western to Shelcon was effective from January 20, 2006 to January 20, 2007. Shelcon renewed its policy in 2007 and again in 2008.

In response, Western reiterated the allegations did not constitute "property damage" because A-2 did not allege physical injury to the land or loss of use of tangible property, and the exclusions for damage occurring during Shelcon's work operations barred coverage.[2]

Following trial on the lawsuit against Shelcon, the court concluded Shelcon did not breach the contract with A-2. The court ruled A-2 owed Shelcon $511,884.22 plus interest of $255,942.11, and that Shelcon was entitled to an award of attorney fees and costs of approximately $100,000.00. The court entered extensive findings of fact and conclusions of law, and judgment against A-2.

On September 27, Western filed a declaratory judgment action alleging that under the terms of the CGL policy, it did not have a duty to defend Shelcon in the breach of contract lawsuit filed by A-2. Shelcon filed a counterclaim alleging Western had a duty to defend, and sought entry of a judgment for the attorney fees and costs incurred in defending the lawsuit filed by A-2 and treble damages under RCW 19.86.090.

The court granted Western's motion for summary judgment and denied Shelcon's cross motion for summary judgment. Shelcon appeals.

## ANALYSIS

Shelcon contends the court erred in granting Western's motion for summary judgment. Shelcon asserts Western had a duty to defend. Western contends there is

---

[2] The letter states, in pertinent part:

Because the allegations in the complaint fail to allege "property damage" and, even if the allegations do allege property damage, the damages are excluded by exclusions j(5), j(6) and m, Western National cannot defend or indemnify Shelcon from the allegations in this lawsuit.

no duty to defend under the terms of the CGL policy. In the alternative, Western assets that even if there is a duty to defend, property exclusions j.(5) and m. apply and bar coverage.[3]

We review summary judgment de novo. Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 52, 164 P.3d 454 (2007). Summary judgment is proper if no genuine issue of material fact remains and the moving party is entitled to summary judgment as a matter of law. CR 56(c). Interpretation of an insurance contract is a question of law that we also review de novo. Woo, 161 Wn.2d at 52.

Insurance policies are liberally construed to provide coverage wherever possible. Bordeaux, Inc. v. Am. Safety Ins. Co., 145 Wn. App. 687, 694, 186 P.3d 1188 (2008). We determine coverage under the plain meaning of the policy and interpret the agreement to give effect to each provision. Smith v. Cont'l Cas. Co., 128 Wn.2d 73, 78-79, 904 P.2d 749 (1995); Capelouto v. Valley Forge Ins. Co., 98 Wn. App. 7, 13-14, 990 P.2d 414 (1999). The court is also bound by the definitions in the policy. Overton v. Consol. Ins. Co., 145 Wn.2d 417, 427, 38 P.3d 322 (2002).

"It is well settled that the duty to defend under a CGL policy is separate from, and broader than, the duty to indemnify." Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d

---

[3] Exclusion m. states, in pertinent part:

**m. Damage To Impaired Property Or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
   **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
   **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

55, 64, 1 P.3d 1167 (2000). The duty to indemnify rests on the terms of the policy. Hayden, 141 Wn.2d at 64. On the other hand, the duty to defend is triggered if the insurance policy "conceivably covers the allegations in the complaint." Woo, 161 Wn.2d at 53. If the allegations in a complaint conceivably trigger coverage and the duty to defend, the court must then determine "whether an exclusion clearly and unambiguously applies to bar coverage." Hayden, 141 Wn.2d at 64.

The CGL policy provides, in pertinent part:

**SECTION I - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**
    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.[4] We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
    . . . .
    **b.** This insurance applies to "bodily injury" and "property damage" only if:
        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
        **(2)** The "bodily injury" or "property damage" occurs during the policy period; . . .
    . . . .
**2. Exclusions**
This insurance does not apply to:

. . . .

    **j.  Damage To Property**
    "Property damage" to:

    . . . .

        **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on

---

[4] Section V of the CGL policy defines "property damage" to mean:
**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

your behalf are performing operations, if the "property damage" arises out of those operations.

Assuming the allegations in the lawsuit A-2 filed against Shelcon triggered the duty to defend, we conclude the defective work and operations exclusion j.(5) precludes coverage.

The exclusion for the insured's faulty work is one of the primary business risk exclusions in a CGL policy. The rationale for such an exclusion is that faulty workmanship is not a fortuitous event but a business risk to be borne by the insured. Mut. of Enumclaw Ins. Co. v. Patrick Archer Const., Inc., 123 Wn. App. 728, 733, 97 P.3d 751 (2004) (citing 9 LEE R. RUSS, COUCH ON INSURANCE § 129:11, at 129-31 (3d ed. 1997)).

Relying on the language in exclusion j.(5) that states the policy does not apply to property damage to the "particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations," Shelcon argues the exclusion applies only to the settlement markers. Shelcon contends the exclusion does not apply to "consequential property damage" caused by removal of the markers. We considered and rejected the same argument in Vandivort Construction Co. v. Seattle Tennis Club, 11 Wn. App. 303, 522 P.2d 198 (1974), and Schwindt v. Underwriters at Lloyd's of London, 81 Wn. App. 293, 914 P.2d 119 (1996).

In Vandivort, the insured contractor's work caused an earth slide that damaged the site and resulted in increased construction costs to complete the project. Vandivort, 11 Wn. App. at 303. The contractor claimed the exclusion should be limited to the

7

"particular part" of the property on which it was working when the slide occurred.

Vandivort, 11 Wn. App. at 308. We rejected the contractor's argument and held the

unambiguous language of the exclusion barred coverage because the insured "was

performing operations on the property and the injury here for which damages are

claimed arose out of those operations." Vandivort, 11 Wn. App. at 308.

> Vandivort argues that because the slide occurred at Seattle Tennis Club's north property line and damage is claimed beyond that point, the exclusion which it argues applies only to the particular part of any property upon which work is being performed is not applicable. We reject the argument. The plain meaning of the language covers the situation here. Vandivort was performing operations on the property and the injury here for which damages are claimed arose out of those operations.

Vandivort, 11 Wn. App. at 308.

Likewise, in Schwindt, property owners argued that the operation exclusion

applied only to "the particular item of defective work" and did not extend to

consequential damages from the faulty work. Schwindt, 81 Wn. App. at 302. We

rejected that argument on the grounds that "the exclusion is not limited to the

component out of which the damage arose." Schwindt, 81 Wn. App. at 304.

Here, as in Vandivort and Schwindt, A-2 alleged defective performance by

Shelcon in removing the settlement markers resulted in consequential damages to the

entire site. Specifically, the reduction in value of the property from $8,550,000 to

$6,412,500. Because the alleged consequential damages arose out of Shelcon's

operations on the site, we hold the unambiguous language of exclusion j.(5) bars

coverage, and affirm.[5]

WE CONCUR:

_____

Cox, J.

_____

---

[5] The out-of-state cases Shelcon cites to argue the exclusion only applies to the settlement markers are contrary to the decisions in Vandivort and Schwindt. The cases are also factually distinguishable. See Transp. Ins. Co. v. Piedmont Const. Group, LLC., 686 S.E.2d 824 (Ga. Ct. App. 2009) (holding "that particular part of real property" was limited to the room and plumbing of a building the insured was contracted to perform work on and the exclusion did not bar coverage for damage to those parts of the building the insured had not contracted to work); Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74 (Mo. 1998) (holding "that particular part of real property" was limited to the kitchen cabinets because that was the real property that was the subject of the insured's operations at the time of the damage and the exclusion did not bar coverage for damage to the remainder of the house); ACUITY v. Burd & Smith Const., Inc., 2006 ND 187, 721 N.W.2d 33 (holding "that particular part of real property" was limited to the roof the insured was hired to replace and the exclusion did not bar coverage for damage to the interior of the apartment building).